UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHUONG DUONG,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                                    Respondents. | Case No.: 25-CV-3142 JLS (SBC)<br><br>**ORDER (1) GRANTING IN PART WRIT OF HABEAS CORPUS AND (2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 1, 3) |

Presently before the Court is Petitioner Phuong Duong's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1) and Motion for Temporary Restraining Order ("TRO," ECF No. 3). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 8), and Petitioner's Traverse ("Traverse," ECF No. 9). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus

(ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 3).

## BACKGROUND

Petitioner, a Hong Kong national, has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement division at the Otay Mesa Detention Facility, since October 2, 2025. Pet. at 3. Petitioner was brought to the United States by her family in 1981, where they entered as refugees. *Id.* at 5. Petitioner obtained a green card. *Id.* In 2001 and 2003, Petitioner was convicted of burglary, served her sentence, and was placed in removal proceedings. *Id.* She was ordered removed on September 2, 2009. *Id.* Petitioner was in custody for three months, but ICE was unable to effectuate her removal to Hong Kong. *Id.* On November 27, 2009, Petitioner was released from custody on an Order of Supervision. Ret. at 2. Since her release, Petitioner has never missed a check-in appointment. Pet. at 5. On October 2, 2025, Petitioner was arrested by ICE officials during her annual check-in appointment, without providing her any notice or give her an opportunity to contest her detention. *Id.*

Respondents state that on October 4, 2025, ICE provided Petitioner with a Notice of Revocation of Release informing Petitioner that her Order of Supervision had been revoked "based on a review of your official alien file and a determination that there are changed circumstances in your case." Ret. at 20 Ex. 2. Respondents claim that "ICE has been working diligently to effectuate her removal," but Petitioner "has refused to complete travel document request forms submitted to her on October 14, 2025." *Id.* On October 27, 2025, "ICE ERO compiled a travel document request and submitted the travel document application to the Removal and International Operations (RIO) for processing on November 5, 2025." *Id.* On November 18, 2025, "Petitioner was provided an informational interview regarding the revocation of her Order of Supervision, at which time she offered no information pertinent to the inquiry of whether there was a significant likelihood she could be removed in the reasonably foreseeable future." *Id.* Respondents further allege that they do not seek to remove Petitioner to a third country but rather return

her to Hong Kong. *Id.* at 3. The declaring officer believes "there is a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## JURISDICTION

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that "Petitioner's claims necessarily arise from the decision or action by the Attorney General to execute removal orders." Ret. at 5 (simplified). The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not

prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging "whether [the government] may detain her up to the date it does so or remove her to a third country without notice and an opportunity to be heard." Traverse at 6; *Constantinovici v. Bondi*, No. 25-cv-2405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) ("Petitioner challenges his present detention as unlawful, as well as the Government's authority to re-detain him under the post-removal detention statute without notice and an opportunity to respond. Accordingly, this Court has jurisdiction to consider Petitioner's claims."). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025) (finding the Court had jurisdiction in a similar matter); *Sun v. Noem*, No. 25-cv-2433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (same); *Van Tran v. Noem*, No. 25-cv-2334-JES-MSB, 2025 WL 2770623, at *2 (S.D. Cal. Sept. 29, 2025) (same).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[]

1  good reason to believe that there is no significant likelihood of removal in the reasonably
2  foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the
3  Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period
4  of prior post-removal confinement grows, what counts as the 'reasonably foreseeable
5  future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably
6  foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that
7  case, the alien's release may be conditioned on any of the various forms of conditioned
8  release, including an order of supervised release. *Id.* at 700.

9  Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain
10 that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-
11 JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal
12 citation omitted). ICE may re-detain a non-citizen released on an OSUP "if, on account of
13 changed circumstances, [ICE] determines that there is a significant likelihood that the alien
14 may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may
15 also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1).
16 If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation"
17 and be afforded "an initial informal interview promptly after [her] return to . . . custody to
18 afford the alien an opportunity to respond to the reasons for revocation stated in the
19 notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information
20 that [she] believes shows there is no significant likelihood [she may] be removed in the
21 reasonably foreseeable future, or that [she] has not violated the order of supervision." *Id.*

22 Here, Petitioner was ordered removed in 2009. Pet. at 3. Three months after her
23 order of removal, Petitioner was released on an order of supervision, presumably, because
24 her removal was not foreseeable at that time. *Id.*; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f
25 removal is not reasonably foreseeable, the court should hold continued detention
26 unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE
27 agents at her annual ICE check-in on October 2, 2025. *Id.* Petitioner was not provided any
28 notice of the reasons for her revocation at the time of her re-detention. *Id.* at 9; Traverse

at 7. Rather, two days later on October 4, 2025, Petitioner was issued the Notice of Revocation. Traverse at 7. Thus, at the time of her re-detention, Petitioner was not provided notice of the reasons for revoking her release. *Id.*; *see Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"); *M.S.L. v. Bostock*, No. 6:25-cv-1204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025) (finding notice given two days after re-detention insufficient).

Further, even if the notice was given at the time of her re-detention, the notice was insufficient. The notice simply states that this revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case." Traverse at 7. This plain statement is insufficient to provide notice. *See, e.g.*, *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation."); *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

Respondents also failed to provide Petitioner with an interview until November 18, 2025, *six weeks* after Petitioner was re-detained. Ret. at 2. Six weeks later is hardly "promptly after [her] return to . . . custody" as required by § 241.13(i)(3). *See M.S.L.*, 2025 WL 2430267, at *11 (finding an interview twenty-seven days after detention improper).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a likelihood of success where petitioner was not provided an informal interview). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP,

2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of her supervised release without notice or a prompt interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have showed a change in circumstances such that there is now a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal for sixteen years, and in those sixteen years, there has been no progress on securing her removal. Pet at 14. Second, Respondents have failed to secure travel documents for Petitioner. The first time Petitioner was detained, she was released because her removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed. Not only did Respondents re-detain Petitioner without any travel documents, or alleged potential for travel documents, but also due to Petitioner's unique situation as child of Vietnamese parents in a refugee camp in Hong Kong, Respondents have not demonstrated that it is even possible to obtain travel documents to Hong Kong. Traverse at 12. Third, the empty statement by the declaring officer that "there is a significant likelihood of [Petitioner's] removal" is insufficient to satisfy Respondents' burden. Ret. at 3; *Hoac*, 2025 WL 1993771, at *4 (rejecting the government's argument that ICE's intent to apply for travel documents constituted changed circumstances because they failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around").

Therefore, because Respondents have failed to follow their own regulations in re-detaining Petitioner and have failed to demonstrate that her removal is reasonably foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations. The Parties are **ORDERED** to file a Joint Status Report by November 26, 2025, confirming that Petitioner has been released. The Court **DENIES AS MOOT** Petitioner's Motion for a Temporary Restraining Order (ECF No. 3). The Clerk of Court **SHALL CLOSE** the case.

**IT IS SO ORDERED.**

Dated: November 24, 2025

Hon. Janis L. Sammartino
United States District Judge